**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| OWEN ROBINSON, | : | |
| | : | |
| | : | Civil Action No. |
| Petitioner, | : | 11-0258 (JBS) |
| | : | |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| WARDEN KIRBY, | : | |
| | : | |
| Respondent. | : | |
| | : | |

---

SIMANDLE, District Judge:

This matter comes before the Court upon Petitioner's filing of an application seeking habeas relief, pursuant to 28 U.S.C. § 2241 ("Petition"). This Petition will be denied for lack of merit, for the following reasons:

1. Petitioner, presently confined at FCI Fairton, filed his Petition asserting that his loss of vested and non-vested good-conduct credits, as well as other sanctions, was improperly imposed upon him when: (a) Petitioner was apprehended by his prison officials being in possession of an illegal cell phone; and (b) Petitioner's violation was qualified as a "greatest severity" offense (and corresponding sanctions were imposed under the BOP Codes 108 and 199). See Docket Entry No. 1. Petitioner asserted that he had no notice as to the fact that possession of illegal cell phone was a disciplinary infraction of "greatest severity," and – therefore – he should have been charged and sanctioned for committing only a "moderate" violation (under the BOP Code 305)

rather than for a violation of "greatest severity."  See id.
Petitioner, hence, seeks revocation of imposed sanctions and
expungement of his prison record, asserting that certain inmates
known to Petitioner, who were initially sanctioned for possession
of illegal cell phones, were recently granted these very remedies
administratively.

  2. Petitioner's challenges are identical to those dismissed,
as meritless, in numerous actions under § 2241.  Recently, the same
challenges were dismissed in Pittman v. Zickefoose, Civil Action
No. 10-5057 (RMB) (D.N.J.) (filed Sep. 27, 2010).  Specifically,
the court in Pittman addressed an inmate's challenges that he was
unduly charged with (and sanctioned for) the "greatest severity"
Code 108 violation (instead of the "moderate severity" Code 305
violation) in connection with the prison officials of F.C.C.
Petersburg ("FCCP"), Virginia, apprehension of the inmate while he
was in possession of an illegal cell phone.  See id. Docket Entry
No. 6.  The Pittman court observed:

   a. Petitioner's challenges are two-fold.  First, he
seek expungement of his prison records from the fact
that he committed the very infraction underlying his
sanction.  Second – and, seemingly, in support of
his expungement claim – Petitioner asserts that the
imposition of this loss-of-good-conduct-credit
sanction violated his rights because, at the time of
Petitioner's committing his infraction, the overall
impression held by the FCCP general population (and
by Petitioner, in particular) was that - if an
inmate's illegal possession of a cell phone were
detected - the violator would get sanctions other
than loss of good-conduct credit.  Thus, Petitioner
concedes that the FCCP officials put the inmates on
notice that cell phone possession was a sanctionable

infraction, but he alleges that the FCCP officials were obligated but failed to expressly correlate that particular misconduct to Code 108 sanctions, which allowed the inmates (and Petitioner, in particular) to believe that such infraction would be sanctioned under Code 305, a more lenient provision than Code 108.[1]  Petitioner states that a certain BOP official eventually clarified . . . that the BOP had begun construing the possession-of-cell-phone misconduct as Code 108 infraction in order "to incorporate technological advances that were not present when the [original] rule was drafted."[2]  Id. at 8.

b.  Petitioner's challenges are substantively without merit . . . .

---

[1]  [Footnote from Pittman].  An inmate's possession of a cell phone has been construed by the BOP as a Code 108 violation long before Petitioner's infraction.  See, e.g., Donahue v. Grondolsky, 2010 U.S. App. LEXIS 19097, at *1-2 (3d Cir. Sept. 13, 2010) (affirming sanction imposed in 2007, i.e., two years prior to Petitioner's infraction, upon an inmate found in possession of a cell phone SIM card, where that inmate's Code 199 loss-of-good-conduct-credit sanction was expressly analogized by the BOP to the then-existing sanction imposed for Code 108 possession of a cell phone).  In the same vein, Petitioner's incident report and the administrative hearing charge notice both stated, in no ambiguous terms, that Petitioner committed a Code 108 violation and was charged accordingly, i.e., with a Code 108 violation committed by his act of possessing of a hazardous tool: the cell phone.  See Instant Matter, Docket Entry No. 1-1, at 39 and 40.

[2]  [Footnote from Pittman].  Petitioner attributes this quote to the person designated by him as the "Director of the Bureau of Prisons."  See Instant Matter, Docket Entry No. 1, at 8.  However, the exhibits attached to the Petition indicate that Petitioner's administrative appeals at Regional and Central Appeal levels were dismissed as untimely rather than on merits, see Instant Matter, Docket Entry No. 1-1, at 31 and 35; and – in any event – this Court is not entirely clear as to why a "director" of the BOP rather than a Central Office counsel would respond to Petitioner's inquiry.  Thus, the Court cannot rule out the possibility that Petitioner referred to the FCCP warden as "Director of the Bureau of Prisons."

i.   With regard to Petitioner's request for
     expungement, it shall be noted that the Court
     of Appeals stressed its doubts as to whether an
     expungement claim could, altogether, be raised
     in a habeas action.  See Williams v. Fed.
     Bureau of Prisons, 85 Fed. App'x 299 (3rd Cir.
     2004).  In Williams, the inmate filed a § 2241
     habeas petition claiming that the BOP
     improperly refused to delete information
     contained in his prison file.  See id. at 303.
     In response, the Court of Appeals observed:

          We have never had to decide whether to
          endorse the right of expungement announced
          in Paine v. Baker, 595 F.2d 197 (4th Cir.
          1979), and other Circuit Courts of Appeals
          have expressly questioned its precedential
          value. [See] Johnson v. Rodriguez, 110
          F.3d 299, 308-09 n. 13 (5th Cir. 1997).
          Nevertheless, [the inmate in Williams]
          argues that his . . . prison file
          expungement claim are meritorious under
          Paine v. Baker.  There, the Court of
          Appeals for the Fourth Circuit announced
          that, in limited circumstances, state
          prisoners have a federal due process right
          to have "prejudicial erroneous information
          expunged from their prison files."
          [Paine,] 595 F.2d at 202.  The court held:

               In certain limited circumstances a
               claim of constitutional magnitude is
               raised where a prisoner alleges (1)
               that information is in his file, (2)
               that the information is false, and
               (3) that it is relied upon to a
               constitutionally significant degree.

          Id. at 201. [The inmate now] argues that
          he can assert Paine v. Baker expungement
          claims in a § 2241 habeas petition.  Even
          if we assume arguendo that [the inmate]
          can assert a Paine v. Baker expungement
          claim in a § 2241 habeas petition, it is
          nevertheless clear that he is not entitled
          to relief [of expungement of] his prison
          file [where the information on file is
          factually correct].

4

<u>Williams</u>, 85 Fed. App'x at 303 (emphasis
supplied).[3]  In light of the "arguendo" language
used by the Court of Appeals in <u>Williams</u> and
the clarifications provided, later on, by the
Supreme Court in <u>Wilkinson</u>, Petitioner's
expungement claim appears not cognizable in a
habeas action.  Moreover, even if presumed
cognizable, this claim is facially without
merit and should be summarily dismissed simply
because Petitioner here concedes that he, in
fact, committed the infraction reflected in his
prison file and, hence, that information [that
he possessed an illegal cell phone] cannot be
false.

ii.  Furthermore, the BOP's decision to sanction
Petitioner for his misconduct facially met due
process requirements. When a disciplinary penalty
affecting the length of a sentence is imposed, the
Due Process Clause requires that "some evidence" be
produced to support the decision to sanction.  <u>See</u>
<u>Superintendent v. Hill</u>, 472 U.S. 445, 457 (1985);
<u>see</u> <u>also</u> <u>Young v. Kann</u>, 926 F.2d 1396, 1402-03 (3d
Cir. 1991) (applying <u>Hill</u> standard to a federal
prisoner's due process challenges).  Since the "some
evidence" standard requires only that the decision
not be arbitrary or not without any support in the
record, <u>see</u>, <u>e.g.</u>, <u>Gaither v. Anderson</u>, 236 F.3d
817, 819 (7th Cir. 2000) (citing <u>Hill</u>, 472 U.S. at
457); <u>Brown v. Fauver</u>, 819 F.2d 395 (3d Cir. 1987),
and Petitioner here concedes that he, in fact,
committed the very infraction for which he was
sanctioned, the BOP's decision to impose a
disciplinary penalty could not run afoul of the
requirements posed by the Due Process Clause.

iii.  In the event Petitioner sought to assert that he had
due process rights to keep his good-conduct credit
and be sanctioned by other means, Petitioner's
position is, too, without merit.  Petitioner has no
"pre-vested" liberty interest in any certain amount
of good-conduct credit, <u>see</u> <u>Barber v. Thomas</u>, 130 S.
Ct. 2499 (2010); rather, he has to actually earn

---

[3]  [Footnote from <u>Pittman</u>].  <u>Williams</u> was decided before the
Supreme Court's ruling in <u>Wilkinson v. Dotson</u>, 544 U.S. 74
(2005), the rationale of which seems to outright bar all § 2241
challenges seeking expungement.

them.  _See_ 18 U.S.C. § 3624 (plainly stating that an
inmate good time credit must be earned); _see_ _also_
_Sample v. Morrison_, 406 F.3d 310 (5th Cir. 2005)
(the statute grants the BOP the power to determine
whether or not the inmate has complied with
institutional disciplinary rules); _accord_ _Lynce v._
_Mathis_, 519 U.S. 433, 445 (1997) (the inquiry is
limited to an inmate's eligibility for reduced
imprisonment and does not envision any fixed
guarantee of release).[4]

iv.  Petitioner's position is equally without merit as to
his assertion that he knew he was committing a
disciplinary violation but – without knowing the
particular sanction he would be facing if his
infraction were detected -  he was prevented from
determining whether his decision to commit the
infraction would be "worthy," to him, of the
sanctions that he might suffer.  While Petitioner
has due process rights to notice as to general
categories of the acts prohibited, he has no due
process right to notice as to any specific
administrative sanction he might face if his
violation gets detected.[5]  _See_, _e.g._, _Adams v._
_Gunnell_, 729 F.2d 362, 368-70 (5th Cir. 1984) (a
prisoner's right to notice means that the rules must
give a person of ordinary intelligence notice of the
actions prohibited); _accord_ _Cook v. Warden_, 241 Fed.
App'x 828, 2007 U.S. App. LEXIS 14772 (3d Cir.) (_per_
_curiam_) (dismissing the inmate's § 2241 challenges
to vagueness of a BOP's Code and finding that the

---

[4]  [Footnote from _Pittman_].  Since inmates possess a liberty
interest in having their good-conduct credit vested if such
credit is earned, _see_ _Wolff v. McDonnell_, 418 U.S. 539, 555-57
(1974); _Levi v. Holt_, 192 Fed. App'x 158 (3d Cir. 2006), due
process requires, if a disciplinary hearing resulted in loss of
good-conduct credit: (a) 24 hours advance written notice of the
disciplinary charges; (b) an opportunity to testify, call
witnesses and present documentary evidence; and (c) a written
statement by the fact-finder as to the evidence relied upon and
reasons for the disciplinary action.  _See_ _Wolff_, 418 U.S. at
564-566.  However, since the minutiae of Petitioner's
administrative hearing at the FCCP were not even mentioned –
moreover challenged – in the Petition, the Court need not
construe the Petition as raising any _Wolff_-related aspects.

[5]  [Footnote from _Pittman_ deleted]

notice was sufficient where the inmate was provided
with a prison handbook informing him of the
categories of acts proscribed, even though different
prison handbooks detailed the proscribed activities
with different degree of particularity), cert.
denied 552 U.S. 1051 (2007); Cotten v. Ward, 190
Fed. App'x 701, 702 (10th Cir. 2006) (affirming
dismissal of § 2241 challenges where the prison rule
was "sufficiently clear and unambiguous to provide
fair notice to inmates of what conduct [was]
prohibited"); see also Eason v. Owen, 2010 U.S.
Dist. LEXIS 82153, at *6 (D.S.C. Apr. 29, 2010)
(dismissing an inmate's § 2241 challenges asserting
that possession of a cell phone should be deemed a
"lesser included offense" of Code 108 and, thus,
subjected to a lesser sanction under another BOP
Code).  This is so because, unlike with regard to
criminal statutes, no high degree of precision is
required of disciplinary regulations, especially as
to the sanctions entailed.  See Meyers v. Alldredge,
492 F.2d 296, 310 (3d Cir. 1974) ("[d]ue process
undoubtedly requires certain minimal standards of
specificity in prison regulations [but] the degree
of specificity required of such regulations is [not]
as that required of . . . criminal sanctions");
Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir. 1974)
(administrative notice is generally deemed given
"unless fair notice was clearly lacking"); compare
United States v. Batchelder, 442 U.S. 114, 123
(1979) (noting, in dictum, that "vague sentencing
provisions may pose constitutional questions if they
do not state with sufficient clarity the
consequences" of the violation, but for the purposes
of a criminal statute, not a disciplinary
regulation).  Here, Petitioner outright concedes
that, at all pertinent times, he was on notice that
possession of a cell phone was a proscribed offense
and, moreover, a sanctionable misconduct.  In
addition, Petitioner concedes that, at all pertinent
times, he was aware of the exact language of Code
108, which prohibits "[p]ossession . . . of a
hazardous tool [i.e., the] tools most likely to be
used in an escape or escape attempt."  See
<<http://www.bop.gov/locations/institutions/pem/PEX_
aohandbook.pdf>> at 51 (FCCP "Inmate Information

Handbook");[6] accord Instant Matter, Docket Entry No. 1, at 8-9 (indicating that Petitioner was given a copy of the Handbook). Consequently, Petitioner was put on notice, by the very language of Code 108, that Code 108 sanctions could be applied to him for the misconduct of possession of a hazardous tool in the form of a cell phone. See Robinson v. Warden, 250 Fed. App'x 462 (3d Cir. 2007) (per curiam) (rejecting the inmate's argument that Code 108 was too vague for the purposes of providing notice of the Code's applicability to cell phone infractions). Petitioner's allegations to that effect will, therefore, be dismissed.

v.    Finally, in the event Petitioner invites the Court to find abuse of discretion in the BOP's construction of Code 108 as covering the misconduct of cell phone possession, the Court declines the invitation: federal courts have long established that the BOP's construction was reasonable. See, e.g., Ausberry v. Grondolsky, 2008 U.S. Dist. LEXIS 110521 (D.N.J. Sept. 9, 2008) (where the BOP sanctioned an inmate with Code 108 loss of good-conduct credit upon analogizing the inmate's illegal MP3 player to a cell phone, the court rejected the inmate's lack-of- notice challenges finding that the language of Code 108 provided sufficient notice as to the entire category of such electronic devices) (relying Robinson for the observation that the BOP's definition of a cell phone as hazardous tool within the meaning of Code 108 was neither plainly

---

[6]  [Footnote from Pittman]. In addition to the definition provided in Code 108 included in the FCCP Inmate Information Handbook, the Handbook also explains that:

Contraband is . . . any item or thing not authorized or issued by the institution, received through approved channels, or purchased through the Commissary. All staff are alert to the subject of contraband and make an effort to locate, confiscate, and report contraband in the institution. Any item in an inmate's personal possession must be authorized and a record of the receipt of the item should be kept in the inmate's possession. . . .

<<http://www.bop.gov/locations/institutions/pem/PEX_aohandbook.pdf>> at 12.

erroneous nor inconsistent with BOP regulations, and citing <u>Chong v. Dist. Dir.</u>, 264 F. 3d 378, 389 (3d Cir. 2001), for the umbrella proposition that the BOP's interpretation of its own regulation is "controlling . . . unless it is plainly erroneous or inconsistent with the regulation"); <u>see also</u> <u>Eason</u>, 2010 U.S. Dist. LEXIS 82153, at *5-6 ("[e]ven though Code 108 does not specifically include cell phones in the examples of hazardous tools, the BOP . . . consistently viewed them as such because they 'permit an inmate to circumvent the telephone monitoring system, and may be used as a tool which coordinates or facilitates escape and the introduction of illicit materials or drugs'") (relying on <u>Robinson</u> and the statement made by the BOP National Inmate Appeals Administrator Harrell Watts, and citing, <u>inter alia</u>, <u>Irvin v. Fed. Bureau of Prisons</u>, 2009 U.S. Dist. LEXIS 54103 (D.S.C. 2009); <u>Marin v. Bauknecht</u>, 2007 U.S. Dist. LEXIS 83514 (D.S.C. 2007); <u>Rivera-Lind v. Pettiford</u>, 2006 U.S. Dist. LEXIS 76677 (D.S.C. 2006), and <u>Carey v. Williams</u>, 2006 U.S. Dist. LEXIS 77092 (S.D. W. Va. 2006)); <u>accord</u> <u>Hudson v. Edmonson</u>, 848 F.2d 682 (6th Cir. 1988) (relying on <u>Hill</u> for the umbrella holding that selection of a particular disciplinary sanctions based on some evidence should not be second-guessed by the courts). Consequently, Petitioner's assertions that the BOP improperly construed its Code 108 as applicable to cell phones (that is, if such assertions were intended) are, too, without merit and will be dismissed.

<u>Pittman v. Zickefoose</u>, Civil Action No. 10-5057, Docket Entry No. 6 (citations to docket entries made in <u>Pittman</u> omitted, original footnotes preserved and reproduced in this Memorandum Opinion as footnotes in the above-replicated block quotation).[7]

---

[7]  The considerations of and determinations made by the <u>Pittman</u> court are shared throughout the federal judiciary. <u>See</u>, <u>e.g.</u>, <u>Hicks v. Yost</u>, 377 Fed. App'x 223, 224-25 (3d Cir. 2010) ("Contrary to what [the inmate] appears to argue, the absence of the term 'cell phone' in the text of Code 108 did not prevent the BOP from interpreting that provision to include this item. Moreover, [the inmate] has not shown that the BOP's interpretation of Code 108 is plainly erroneous or inconsistent

3.    Moreover, in the event the BOP elected to expunge the prison records of – and revoke sanctions against – certain inmates originally sanctioned for possession of illegal cell phones, such decisions by the BOP do not lend support to Petitioner's challenges.  Such actions by the BOP would render those inmate's habeas challenges moot, rather than legally valid. See, e.g., Hudson v. Zickefoose, 2010 U.S. Dist. LEXIS 120936 (D.N.J. Nov. 15, 2010) (where the BOP expunged the inmate's record and revoked sanctions based on his illegal possession of a cell phone, the BOP's actions rendered the inmate's claims moot, but it did not render his claims meritorious).[8]

4.    Finally, Petitioner's challenges based on such sanctions as disciplinary segregation, transfer to another prison facility,

─────────────────

with that provision") (citing Chong, 264 F.3d at 389); McGill v. Martinez, 348 Fed. App'x 718 (3d Cir. 2009) (same); Franco v. Adler, 2011 U.S. Dist. LEXIS 20501 (E.D. Cal. Mar. 1, 2011) (same); Thorn v. Shartle, 2011 U.S. Dist. LEXIS 1334 (N.D. Ohio Jan. 6, 2011) (same); Thomas v. Phillips, 2010 U.S. Dist. LEXIS 96681 (S.D.W. Va. Aug. 25, 2010) (same, dismissing, inter alia, expungement claim).  If a practical conclusion could be distilled from this body of law, this conclusion appears to be that possession of illegal cell phones by inmates became a prevalent hazardous practice.  That conclusion, in turn, lends additional support to the BOP's interpretation of Codes 108 and 199 as applicable to illegal cell phone possession.

[8]   Indeed, Petitioner in this matter expressly cited the relief given to Hudson, even though Judge Kugler, in his decision finding Hudson's claims moot, expressly stressed that Hudson's habeas challenges were without merit.  See Hudson, 2010 U.S. Dist. LEXIS 120936, at *2-3 ("[E]ven if the Petition has not been rendered moot . . . (i.e., if Petitioner's sanctions under the BOP Codes 199 or 108 remained in force), Petitioner's challenges would be subject to dismissal [on merits]").

loss of telephone privileges or loss of visitation privileges cannot be litigated in a habeas action.  See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002); Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3d Cir. 2007); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3d Cir. 2002).  Therefore, these challenges are dismissed for lack of jurisdiction, without prejudice to Petitioner's raising these claims in a civil complaint.[9]

For the foregoing reasons, the Petition will be denied.  An appropriate Order accompanies this Memorandum Opinion.


                              s/ Jerome B. Simandle
                              JEROME B. SIMANDLE
                              U.S. District Judge

Dated: **March 23, 2011**

---

[9]  No statement made in this Memorandum Opinion shall be construed as expressing this Court's position on substantive or procedural validity or invalidity of such challenges.